**Application of SUPERIOR OUTDOOR DISPLAY, INC.**

**Patent Appeal Nos. 8956, 8957.**

United States Court of Customs and Patent Appeals.
June 14, 1973.

Fred Flam, Flam & Flam, Encino, Cal., attys. of record, for appellant. D. Paul Weaver, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Associate Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

These appeals are from two decisions of the Trademark Trial and Appeal Board refusing registration of SUPERIOR and a design (No. 8956) [1] and SUPERIOR (No. 8957),[2] each for "Electrically Illuminated Outdoor Displays." [3] Refusal was based in both cases on prior registration No. 663,071 of SUPERIOR for a long list of electrical items. The prior registration was owned by Eagle Electric Mfg. Co. (Eagle). Eagle began use in 1930, appellant in 1959. The records, except for the design portion of the mark in No. 8956, are virtually identical. Hence, our present opinion, treating the mark as SUPERIOR, will suffice for both cases. The two decisions are reversed.

## The Facts

Appellant had filed an earlier application [4] which had been rejected on the same ground and the same reference mark.[5] Thereafter appellant and Eagle entered into an agreement, in letter form, and appellant filed the present application, attaching exhibits showing its outdoor displays and some of Eagle's electrical hardware goods, a copy of the agreement and an affidavit of appellant's sales manager. The affidavit set forth that appellant's displays are sold by salesmen directly contacting places of business and that the prices of such displays range upward from $200.

The registration lists some 44 items of electrical hardware, ranging from electric appliance cords and connector clips through electric percolators and toasters to push buttons and desk lamps. The examiner and the board noted in this wide ranging list the presence of "incandescent lamps" and "electric sign flashers."

The agreement spelled out (1) appellant's sales methods throughout the United States (2) that appellant's goods are not sold in hardware stores (3) that appellant and Eagle had done business together for years (4) that the Patent Office had held [the earlier decision] that appellant's displays and Eagle's sign flashers were "identical in kind" and "could well emanate from a common source" (5) that appellant's application [6] is specifically for electrically illuminated outdoor displays and for no other products (6) that neither party was aware of any actual confusion (7) that the goods of the parties bore no relationship in use, promotion, distribution or sale (8) that neither party foresaw any like-

1. Serial No. 308,441, filed September 30, 1968.

2. Serial No. 307,145, filed September 11, 1968.

3. The board opinion for serial No. 308,441 is reported at 168 USPQ 378 (1970) and for serial No. 307,145 is abstracted at 168 USPQ 543 (1970).

4. Serial No. 212,459.

5. In re Superior Outdoor Display, Inc., 154 USPQ 631 (TTAB 1967).

6. The letter heading refers to "Application Serial No. 212,459" but the goods are identical in both of appellant's applications.

lihood of confusion (9) that appellant would not use the mark on electrical hardware or other electrical items and would restrict its use solely to electrically illuminated outdoor displays and replacement parts for such displays and (10) that Eagle had no objection to the registration sought by appellant.

### The Rejection

In his final rejection, the examiner stated:

> The Examiner does not believe that a letter of consent can negate the provisions of Section 2(d) of the Trademark Act of 1946.

In his Answer, the examiner pointed to the presence of "electric sign flashers" in the goods of the registration, "again" directed applicant's attention to the decision on the earlier application, stating his continued belief that that decision "is controlling here." The examiner noted the "letter of consent" but did not consider it "sufficient grounds for allowance" when the marks were identical and the goods "so closely related as those here involved." Referring again to the prior decision, the Examiner's Answer closes with:

> The Examiner appreciates that the facts and enclosures here differ from those in application Serial No. 212,-459 which resulted in the decision cited above. But, he still believes that said decision is here pertinent.

The board, recognizing that the present record contained an additional element beyond those in the record on which its earlier decision was based, i. e., the consent of registrant, felt compelled to sustain the examiner's rejection in view of our decision in In re Continental Baking Company, 390 F.2d 747, 55 CCPA 967 (1968), wherein we said:

> It may well be that individual agreements regarding use and registration of trademarks are of "evidentiary value," as the board here has demonstrated. However, in enacting Section 2(d) of the Lanham Act * * * Congress clearly charged the Patent

Office with the initial responsibility of determining whether certain trademarks are entitled to *registration,* as distinguished from use, within the scope of that section. To hold that the present consent to *register* should control would be to allow individuals to take the law in their own hands, thus usurping the responsibility that Congress has placed in the Patent Office.

The board did not disregard the agreement herein. On the contrary, it noted that Eagle's consent related only to electrically illuminated outdoor displays and yet the agreement specifically provided that appellant was free to use the mark for "replacement parts for its outdoor displays" and that the incandescent lamps and sign flashers of Eagle "may constitute such replacement parts." Thus, in accordance with its "responsibility" described in *Continental Baking,* the board saw a likelihood of confusion emanating from use of the identical mark on *these products* and held that the consent agreement could not overcome the proscription of Section 2(d).

### OPINION

We have often found confusion likely when identical or similar marks are used on closely related electrical goods. Wincharger Corporation v. Rinco, Inc., 297 F.2d 261, 49 CCPA 849 (1962); Eastern Industries, Inc. v. Waterous Company, 289 F.2d 952, 49 CCPA 701 (1961); In re General Cable Corp., 222 F.2d 736, 42 CCPA 906 (1955); Sigma Industries, Inc. v. Sigma Instruments, Inc., 470 F.2d 1055, (CCPA 1973). In the latter case, the wire sealing product of the applicant was visibly used on the equipment of opposer. The records in those cases, however, contained no indication by the parties that the nature of the goods, or their use and distribution, were such as to render confusion unlikely. In three of those cases a party submitted evidence and argument that confusion was likely.

The present record, as did that in In re E. I. DuPont DeNemours & Co., 476 F.2d 1357 (CCPA 1973), contains an agreement by those most familiar with

and most pecuniarily affected by the facts of the marketplace. The present agreement, as above indicated, constitutes far more than a mere "consent" of Eagle to registration by appellant. Specifically referring to the Patent Office position vis-à-vis appellant's earlier application, it established, in the absence of contrary evidence, the absence of actual confusion for 10 years, the disparity in the relationship, promotion, use and distribution of the goods and the belief of both parties that confusion was unlikely.

■ As was true in *DuPont,* the earlier decision, though it may have been correct on an earlier and different record, is irrelevant here. The question is not whether the additional evidence (the agreement) overcame the earlier decision. Nor is it whether the agreement negated the statute or stripped the Patent Office of its responsibility. Congress alone can do that. The question is whether the total record, now including the agreement, indicates a likelihood or nonlikelihood of confusion. We think the agreement evidence, in this case, clearly rebuts the "closely related goods" basis of the earlier decision and indicates that confusion is unlikely.

■ We would remark the apparent basis of the board's decision as being the likelihood of confusion emanating from concurrent use of the identical mark on two of Eagle's items and appellant's "replacement parts." But registration is sought for displays, not for replacement parts. We do not reach the question of whether a prior purchaser of appellant's displays would or would not be likely to be confused in ordering replacement parts for those same displays. The question under Section 2(d) must be decided in relation to the goods for which registration is sought. See Paula Payne Products Co. v. Johnson Publishing Co., Inc., 473 F.2d 901 (CCPA 1973); Commerce Drug Co. v.

Kirkman Laboratories, Inc., 59 CCPA ——, 461 F.2d 833 (1972). We are not concerned with a use which *might* occur on goods not described or not included within the description of goods in the application. If confusion should stem from use for replacement parts, it would not be caused by the requested registration. Registration never produces confusion. Nor could it result from any use on which the present application for registration is based. It would result from a use in relation to which neither we nor the Patent Office has any "responsibility."

In any event, we view the "replacement parts" provision in this case as a normal, practical aspect of everyday business realities. Appellant could not safely assure against the occurrence of its mark on packages and literature accompanying its replacement parts for its previously sold displays and Eagle saw no likelihood of confusion arising from such use. The provision appears to us, therefore, as both irrelevant to the registration sought and as indicative of a careful regard for the total market interface between parties who intend to abide by their agreement.

Reference may be had to our opinion in *DuPont* with respect to arguments in the briefs which are directed by appellant to its right to use the mark and by the solicitor to the effect of doubt in relation to consents and the duty of the Patent Office under Section 2(d). The briefs herein were, of course, prepared and filed prior to publication of our opinion in *DuPont.*

Because we think the total record establishes such a marketplace disparity between appellant's electrically illuminated outdoor displays and Eagle's electrical items as to render confusion unlikely, the decisions below must be reversed.

Reversed.