**CENTURY 21 REAL ESTATE CORPORATION, a Delaware corporation, Plaintiff–Appellee,**

v.

**Billy SANDLIN, an individual, dba Century Investments & Realty, Defendant–Appellant.**

No. 87–1598.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 12, 1987.

Memorandum Feb. 25, 1988.

Order and Opinion May 19, 1988.

Billy Sandlin, Newark, Cal., for defendant-appellant.

Michael Grow, Ward, Lazarus, Grow & Cihlar', Washington, D.C., for plaintiff-appellee.

Before GOODWIN and FLETCHER, Circuit Judges, and KING,* District Judge.

## ORDER

The memorandum disposition filed February 25, 1988, is redesignated as an authored opinion by Judge Fletcher.

## OPINION

FLETCHER, Circuit Judge:

This is a trademark infringement and dilution action brought by Century 21 against one of its former real estate franchisees, Billy Sandlin. Upon termination of the franchise agreement, Sandlin changed the fictitious name under which he did business from "Century 21 Estates" to "Century Investments & Realty." The district court granted summary judgment to Century 21 and permanently enjoined Sandlin from using the new name. We affirm.

## FACTS AND PROCEEDINGS BELOW

Century 21 operates a system of independently owned, franchised real estate brokerage offices throughout the United States and abroad. Its service mark "Century 21" is registered in the United States Patent and Trademark Office, which is prima facie evidence of Century 21's ownership and exclusive right to use the mark in commerce without restriction or limitation. Century 21 also owns several California service mark registrations. More than 6000 independently owned brokerages use the Century 21 trademarks, service marks, and trade name, and collectively advertise nationwide in print and television media.

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Billy Sandlin is a real estate broker in Newark, California. From 1976 until December 1984, he was a Century 21 franchisee, doing business as (dba) "Century 21 Estates". Sandlin's contract required him, upon termination of the franchise, to discontinue using the mark "Century 21". He was terminated in December 1984. Sandlin changed his dba to "Century Investments & Realty" in January 1985, but his business continued to be listed in both the local telephone directory and the local real estate multiple listing service as Century 21 Estates. By his own admission, Sandlin chose his new dba so that his old customers could find him. He also advertised his business with a sign which Century 21 contended was significantly similar to its distinctive yellow, brown and white yard sign suspended from a yellow pole.

Century 21 moved the district court for summary judgment on seven counts: federal trademark infringement, 15 U.S.C. § 1114; federal unfair competition, 15 U.S.C. § 1125(a); California statutory trademark infringement, Cal.Bus. & Prof. Code § 14340; dilution, Cal.Bus. & Prof. Code § 14330; unfair competition, Cal.Bus. & Prof.Code § 17200 *et seq.;* and California common law trademark infringement and dilution. The court granted summary judgment to Century 21 on every count, and Sandlin appealed, pro se, to this court. We have jurisdiction over the appeal under 28 U.S.C. § 1291.

## I. APPROPRIATENESS OF SUMMARY JUDGMENT

■ We review a grant of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Viewing the evidence in the light most favorable to the non-moving party, we determine whether the substantive law was correctly applied and whether there is any issue of material fact. *Id.*

■ The district court correctly applied federal and California law to Century 21's trademark infringement and unfair competition claims, recognizing that the "crucial issue" is whether the defendant's use of the plaintiff's service mark or trade name creates a "likelihood of confusion" for the public. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987).

### A. *Elements of Federal Trademark Infringement and Unfair Competition Claims.*

■ A claim of federal trademark infringement may be brought against any person who shall, without consent of the holder of the registered trademark,

use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...

15 U.S.C. § 1114(1)(a). Neither actual confusion nor intent is necessary to a finding of *likelihood* of confusion. *J.B. Williams Co. v. Le Conte Cosmetics,* 523 F.2d 187, 191 n. 5, 6 (9th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976).

■ Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for anyone injured by unfair competition:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services ... any false description or representation, including words or other symbols tending falsely to describe or represent the same ... shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The "ultimate test" for unfair competition is exactly the same as for trademark infringement: "whether the public is likely to be deceived or confused by the similarity of the marks." *New West Corp. v. NYM Co. of California,* 595 F.2d 1194, 1201 (9th Cir.1979) (citations omitted).

### B. *Analysis of the J.B. Williams Test.*

■ The test for determining likelihood of confusion, as articulated in *J.B.*

*Williams,* 523 F.2d at 191, requires consideration of six factors:

1) the strength or weakness of the marks;

2) similarity in appearance, sound, and meaning;

3) the class of goods in question;

4) the marketing channels;

5) evidence of actual confusion; and

6) evidence of the intention of defendant in selecting and using the alleged infringing name.

██ Analyzing the undisputed facts before it according to the *J.B. Williams* test, the district court concluded that Sandlin's use of the word "Century" and his yard sign created a likelihood of confusion for the public. A trial court's determination of the likelihood of confusion is reviewed by this and most other circuits under the "clearly erroneous" standard. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1355–56 (9th Cir.1985).[1] The district court's conclusion was not "clearly erroneous", since evidence for each of the six factors points to a likelihood of confusion.

1) *Strength of the mark.* "A 'strong' mark is one which is used only in a 'fictitious, arbitrary and fanciful manner', whereas a 'weak' mark is a mark that is a meaningful word in common usage, or is merely a suggestive or descriptive trademark." *J.B. Williams,* 523 F.2d at 192 (citations omitted). Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness.

Evidence of the strength of Century 21's mark includes the fact that it has expended several million dollars in advertising real estate services rendered in connection with the "Century 21" mark, and that the mark has been used in connection with real estate sales in excess of one billion dollars. In addition, at least two federal district courts have found Century 21's mark to be "strong". *Century 21 Real Estate Corp. v. Century Resorts International, Inc.,* 211 U.S.P.Q. (BNA) 227 (N.D.Ill.1981); *Century 21 Real Estate Corp. v. 21st Century Construction Corporation,* slip op. No. 78 C 32218 (N.D.Ill. October 2, 1979) ("likelihood of confusion is increased by the fact that Plaintiff's mark is a strong mark entitled to a broad scope of protection").

2) *Similarity in appearance, sound, and meaning.* The identical dominant term "Century" is the lead word in each entity's name, which can foster confusion. Also, the district court judge, who had the opportunity to view examples of both parties' yard sign designs, found them to be sufficiently similar to hazard confusion.

3) *Class of goods in question.* The goods—real estate properties and real estate brokerage services—are essentially the same.

4) *Marketing channels.* Both Century 21's and Century Investments & Realty's marketing channels are substantially the same: local listings, yard signs, advertising.

5) *Evidence of actual confusion.* Sandlin, himself, made several slips of the tongue during the summary judgment hearing. At least twice, while arguing his position to the district court, Sandlin referred to "Century 21" when he meant to say "Century". The district court found at least one other instance of actual confusion, in which a couple listed their home with Sandlin, believing him to represent Century 21. Sandlin's dispute of this finding—contending that the confusion was due to the incorrect telephone listing, over which he had no control—does not change the outcome, since actual confusion need not be shown. *J.B. Williams,* 523 F.2d at 191 n. 5.

6) *Evidence of defendant's intention.* By his own admission, Sandlin chose his new dba in order to benefit from his former

1. Applying the categories suggested in *United States v. McConney,* 728 F.2d 1195, 1200–02 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), the *Levi Strauss* court held that likelihood of confusion is the type of mixed question of law and fact that is predominantly factual in nature, and well suited to clearly erroneous review, since it did not implicate constitutional rights and because the applicable legal standard provides for a strictly factual test. 778 F.2d at 1355.

affiliation with Century 21. In a letter to Century 21's attorney, Sandlin stated:

> ... I chose to use Century as part of my new business DBA CENTURY INVESTMENTS & REALTY for the following reasons: ... 2 ... I needed something that would lead [my customers] to my new DBA. In order to stimulate their memory and to provide a trail (so to speak) to follow to get my new DBA so ,they can then call me, I came to the conclusion that I needed the word CENTURY as the first word of the new DBA ... they can find my new DBA by the process of elimination. In this area I will be the only non Century 21 real estate office using the word "CENTURY" as part of their DBA .... I DO WANT TO PROVIDE A WAY TO STIMULATE MY CLIENTS MEMORY SO THEY CAN FIND ME.... [emphasis in original].

This evidences wrongful intent.

### C. Analysis of State Trademark and Unfair Competition Claims.

■ The district court was also correct in granting summary judgment on all state law claims. The standard of review for summary judgment on state trademark infringement and unfair competition claims is the same as that for the corresponding federal claims: questions of state law are reviewed de novo, and conclusions regarding the likelihood of confusion are reviewed under the clearly erroneous standard. *Levi Strauss*, 778 F.2d at 1361 (relying upon *Matter of McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc) and *United States v. McConney*, 728 F.2d at 1199–1204).

■ California statutory trademark infringement is proved if anyone uses a mark that is identical with, or substantially indistinguishable from, a mark registered in the state, on or in connection with goods or services for which the genuine mark is registered. Cal.Bus. & Prof.Code § 14340. This claim is proved by Century 21's registrations of its marks in California; by Sandlin using his similar mark in the provision of identical services; and by the district court's finding of a likelihood of confusion.

■ Likelihood of confusion is also the test in California for whether use of a similar business name constitutes unfair competition. *In re Marriage of Shelton*, 118 Cal.App.3d 811, 816, 173 Cal.Rptr. 629, 631 (1981). Prevailing on a state trademark infringement claim also entails prevailing on the state unfair competition claim, since "common law and statutory trade-mark infringements are merely specific aspects of unfair competition," and "trade name infringement ... is part of the larger tort of unfair competition and it is based on considerations similar to trademark infringement." *New West Corp.*, 595 F.2d at 1201.

■ California's antidilution statute does not require a showing of likelihood of confusion. *Levi Strauss*, 778 F.2d at 1362; Cal.Bus. & Prof.Code § 14330 (West 1984). All that need be shown is the "likelihood of injury to business reputation or of dilution of the distinctive quality of a mark." *Id.* § 14330. Actual injury need not be proven. We agree with the district court that use of "Century Investments & Realty" in the real estate brokerage context could dilute Century 21's distinctive mark.

## II. ISSUANCE OF THE PERMANENT INJUNCTION

■ The district court permanently enjoined Sandlin from using the name "Century" as part of his dba, and from using any yard sign, name, or mark confusingly similar to Century 21's marks and design in connection with his business. The district court's issuance of an injunction to remedy trademark infringement is reviewed for an abuse of discretion. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021–22 (9th Cir.1985).

■ Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement. It is the remedy provided by federal and state trademark infringement statutes. 15 U.S. C. § 1116(a); Cal.Bus. & Prof.Code

§§ 14330, 14340, 17200 *et seq.* In cases where the infringing use is for a similar service, broad injunctions are especially appropriate:

> Where a name, whether registered as a trademark or not, enjoys an international reputation, the use of any colorable imitation will be enjoined pendente lite under 15 U.S.C. § 1125(a) if the use of the colorable imitation is for a similar service.

*Citibank, N.A. v. City Bank of San Francisco,* 206 U.S.P.Q. (BNA) 997, 1009 (N.D. Cal.1980).

■ In light of the likelihood of confusion arising from Sandlin's use of the word "Century" in offering service very similar to Century 21's, we find no abuse of discretion in the issuance of the injunction.

## III. REFUSAL TO EXTEND DISCOVERY PERIOD

■ Finally, Sandlin claims that the district court's denial of his request for additional time for discovery denied him due process of law, and requests relief in the form of an additional 90 to 120 days for discovery. This request was properly denied by the district court.

On September 15, 1986 the district court issued an order setting the schedule for briefs and hearing on Century 21's motion for summary judgment. The order set a December 1, 1986 deadline for Sandlin's memorandum in opposition, and directed Sandlin to submit with his memorandum a detailed plan outlining his discovery needs and a schedule for accomplishing them. Sandlin's memorandum, filed one day late, lacked a discovery schedule. Eleven days later, and three days before summary judgment argument, he filed a request for an extension of discovery time in order to conduct a survey of the general public and of real estate firms and financial firms that used the name "Century". He filed a second extension request on December 16th, the day after argument and after the court had issued a tentative ruling in Century 21's favor.

District court judges possess broad authority to regulate the conduct of discovery, and their decisions to limit discovery are reviewed for an abuse of discretion. *Barona Group of Capitan Grande Band of Mission Indians v. American Mgmt. & Amusement,* 824 F.2d 710, 716 (9th Cir.1987).

■ Denial of the extension requests did not constitute an abuse of discretion. Sandlin had three months in which to conduct discovery, but which he did not utilize. Given that Sandlin ignored the court's deadline and failed to submit a discovery plan as instructed, denial of the extension request was well within the court's discretion.

■ Alternatively, the district court would not have abused its discretion in declining to allow additional time for discovery designed to produce information not relevant to the case's disposition. Here, the information Sandlin sought to discover would not alter the district court's finding of a "likelihood of confusion." Specifically, discovery that revealed other potential infringers would be irrelevant under the law of this circuit and of California. *Citibank, N.A.,* 206 U.S.P.Q. at 1011; *see also United States Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61, 73–74 (N.D.Cal.1972), *aff'd,* 513 F.2d 1226 (9th Cir.1975).

Second, subpoenas from telephone company and local realty listing officials, even if they proved that Sandlin's continuing listings as Century 21 after termination of the franchise were not his fault, would not have altered the court's finding that Sandlin's use of the word Century in his name is confusing. The Century 21 listings were not given weight by the district court in its comments from the bench nor in its order granting summary judgment for Century 21.

■ Third, surveys demonstrating an absence of *actual* confusion among a certain population would not necessarily defeat the *likelihood* of confusion, given that Sandlin had operated under the name Century 21 before becoming Century Investments & Realty.

CONCLUSION

The likelihood of confusion created by use of the word "Century" by a former Century 21 franchisee operating in the same line of business and in the same locale justified the summary judgment and injunction against Sandlin's use of the name Century Investments & Realty. "A newcomer who has the 'entire material universe' or, stated in other terms, 'a whole dictionary full of words, an encyclopedia full of proper names, or a world atlas full of place names,' from which it could have chosen its name and mark, has the duty to avoid the use of a mark similar to an established one." *Citibank N.A.*, 206 U.S. P.Q. (BNA) at 1009 (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir.1963)).

The judgment of the district court is AFFIRMED.