HMH PUBLISHING CO., Inc., a Delaware corporation, and Playboy Clubs International, Inc., a Delaware corporation, Plaintiffs,

v.

Arthur Charles BRINCAT et al., Defendants.

No. C-70-272.

United States District Court, N. D. California.

Jan. 25, 1972.

---

2. This is the matter referred to in footnote 8 of the opinion of the court of appeals.

James T. Fousekis, Steinhart, Goldberg, Feigenbaum & Ladar, San Francisco, Cal., Michael L. Shakman, Devoe, Shadur, Plotkin, Krupp & Miller, Chicago, Ill., for plaintiffs HMH Publishing Co. Inc. and Playboy Clubs International, Inc.

George P. Eshoo, Redwood City, Cal., for defendant Victor Brincat.

Wilson, Jones, Morton & Lynch, Jeremiah J. Lynch and Philip H. Shecter, San Mateo, Cal., for defendant Arthur Charles Brincat.

## FINDINGS OF FACT CONCLUSIONS OF LAW AND JUDGMENT

SPENCER WILLIAMS, District Judge.

This case having come on for trial and the Court having heard testimony, the oral arguments of counsel and having considered the memoranda submitted by the parties, hereby Finds and Concludes as follows:

## FINDINGS OF FACT

### A. *Parties and Jurisdiction*

1. Plaintiff, HMH Publishing Co. Inc. (hereinafter called "HMH" or "plaintiff" is a corporation organized and existing under the laws of the State of Delaware with its principal offices and place of business in the City of Chicago, Illinois. HMH is the successor by merger to the assets, business and goodwill of its corporate predecessor, HMH Publishing Co. Inc., an Illinois corporation. After this litigation commenced HMH changed its corporate name to Playboy Enterprises, Inc. References herein to HMH or plaintiff are references to said plaintiff, its corporate predecessor or to Playboy Enterprises, Inc., depending upon the context. Plaintiff Playboy Clubs International, Inc. ("PCI") is a corporation organized and existing under the laws of the State of Delaware with its principal office and place of business in Chicago, Illinois. PCI is a wholly owned subsidiary of Playboy Enterprises, Inc.

2. The individual defendants, Victor Brincat and Arthur Brincat, are residents of the State of California.

3. Federal jurisdiction exists in that this is an action for the infringement of trademarks registered with the United States Patent Office, to which is joined a substantial and related claim for unfair competition: 28 U.S.C. § 1338. Federal jurisdiction also exists by reason of the complete diversity of citizenship of the parties and the fact that the amount in controversy exceeds $10,000: 28 U.S.C. § 1332. The value of plaintiff's trademarks here in issue is in excess of $10,000, exclusive interest and costs. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391.

### B. *HMH's and PCI's Trademark Registrations and Business Activities Using the Name "Playboy"*

4. Since 1953 HMH has registered a large number of trademarks for the

name "Playboy" with the United States Patent Office and with various state authorities. Plaintiff's federally registered trademarks include the following certificates: No. 600,018 issued December 28, 1954 for Playboy in connection with magazines and No. 769,702 issued May 12, 1964 for Playboy as a service mark for establishments featuring food, drink and entertainment. Among HMH's other federally registered trademarks are six certificates issued between 1959 and 1964 which feature a distinctive Rabbit Head design, Nos. 728,889; 764,819; 761,793; 759,207; 679,997; 734,714. The Rabbit Head design is commonly, but not always, used by HMH in connection with the name Playboy.

5. Since 1953 HMH has published *Playboy* magazine. The magazine has been widely sold throughout the United States and abroad. In addition to publishing *Playboy* magazine, HMH has, directly or through subsidiary or related companies, engaged in a wide variety of other business activities under the name Playboy. These uses of the name Playboy have included uses in connection with a model agency (first used in 1956), television program production (first used in 1960), film production (first used in 1960), a book publishing division (first used prior to 1963), a products division which sells hard and soft goods (including a variety of products such as keys, key chains, wallets, jewelry and clothing) (first used prior to 1964), a movie theatre (first used in 1964) and a limousine service (first used in 1969). In some of these uses the name Playboy is used with a Rabbit Head design which is also a mark owned by HMH.

6. HMH has granted a controlled license to PCI, giving it the exclusive right to use and/or sublicense under controlled franchises the marks of HMH as service marks to identify restaurant-night club (Playboy Clubs) and the services offered therein. Since 1959 PCI has engaged in the sale of Playboy Club "Keys" in the United States and abroad. Possession of a Playboy Club Key entitles the bearer to admission to all Playboy Clubs. Playboy Club Keys have been sold in various ways since 1960, including by direct mail solicitations. Franchised Playboy Clubs are now located in 15 principal cities throughout the United States as well as in Montreal, Canada, and London, England. A Playboy Club was opened in Los Angeles, California on January 1, 1965 and in San Francisco, California on November 3, 1965 and have operated there continuously since that date. Playboy Club-Hotels and Hotels are operated in Jamaica, B.W.I., Lake Geneva, Wisconsin and Chicago, Illinois. All Playboy Clubs, Club-Hotels and Hotels conform to the strict standards of quality and control required by the license agreement between HMH and PCI. The Rabbit Head design is also used in connection with the operation of the Playboy Clubs. In addition, the attractive young women, distinctively costumed, who serve food and beverages to the patrons are referred to as "Bunnies." HMH owns Registration No. 810,555 for the service mark "Bunny" which is so used by PCI.

7. Since 1953 HMH has extensively promoted *Playboy* magazine and its other activities conducted under the Playboy name. For example, HMH has advertised in its own publications, on radio and television, in other magazine and newspapers and by direct mail. HMH has also solicited potential Playboy magazine advertisers, not only in trade publications such as *Wards* and *Printers Ink*, but in metropolitan newspapers and national magazines including the New York *Times* and the Chicago *Tribune* and *Newsweek*. PCI has engaged in advertising and promotion which has included magazine, newspaper and radio advertising, the employment of public relations firms, the printing of promotional pieces placed at the Playboy Clubs and Club-Hotels and the mail solicitations referred to in Paragraph 6 hereof. All of the foregoing advertising and promotional activity has prominently featured the name "Playboy" and has also frequently featured the Rabbit Head design.

8. For many years prior to the first use by the defendants of the name Playboy in late 1967, HMH, PCI and related companies (a) enjoyed large revenues and profits from the publication of *Playboy* magazine, the operation of Playboy Clubs and the sale of Playboy Club Keys, (b) expended large sums to promote said magazine, Playboy Clubs and sale of Playboy Club Keys, (c) mailed many millions of pieces of literature to solicit the purchase of said keys, and (d) sold several million copies of *Playboy* magazine each month. HMH and related companies enjoyed a substantial growth in revenues and expansion of activities in the years prior to 1967 and said growth and expansion has continued up to the present time. Set forth in the following table is information concerning business and advertising of HMH prior to *defendants'* first use of the word Playboy, which occurred in late 1967:

Playboy Magazine's Circulation

| Date | U. S. Circulation | California Circulation |
|---|---|---|
| Average total paid circulation per issue for six months ending June 30, 1967: | 4,253,305 | 511,211 |

| | | |
|---|---|---|
| HMH's Total Gross Receipts For Years Prior to 1967: | $145,424,000 | |

| | | |
|---|---|---|
| PCI's Total Gross Receipts For Years Prior to 1967: | $ 83,615,000 | |

Number of PCI Keyholders by 1967:

| | U. S. Total | California Total |
|---|---|---|
| | 674,437 (year end) | 81,298 (Feb. 1, 1966 figure) |

| Number of PCI Mailings to Solicit Purchase of Playboy Club Keys Prior to 1967: | U. S. Total | California Total |
|---|---|---|
| | 23,446,158 | 4,233,736 |

| | | |
|---|---|---|
| Advertising and Promotion Expenses of HMH and PCI for Years Prior to 1967: | $ 18,640,141 | |

9. For many years, and since long prior to the defendants' first use of the name Playboy in 1967, HMH's *Playboy* magazine has been publicly identified and associated with automotive products, especially with sports and pleasure vehicles. This identification and association had been evidenced, *inter alia*, by the following:

(a) *Playboy* magazine ran approximately 180 pages of automobile advertising in the years 1960–1967 and derived approximately $4,036.282 in revenues from such advertising. The automotive advertising run in *Playboy* magazine in said period heavily emphasized sports and pleasure vehicles. As examples, advertisements were run for such vehicles as Austin Healey, MG, Fiat, Ford Mustang, Porsche, Triumph, Toyota and Volkswagen.

(b) Among all American monthly magazines *Playboy* ranked third in the amount of automotive advertising run in 1967.

(c) In addition, prior to September 1967 *Playboy* magazine published numerous articles and other editorial

materials related to automobiles. Said articles heavily emphasized sport and pleasure vehicles.

The foregoing establish that prior to defendants' first use of the mark Playboy in 1967, HMH had extensively published material on automotive matters in *Playboy* magazine and that major automobile manufacturers regarded an association with *Playboy* magazine as a means of marketing their products.

10. For many years, and since long prior to 1967, HMH has had and now has a large and valuable goodwill due to its activities and the activities of its related companies set out herein. Throughout said period HMH and its related companies have so widely publicized and used the mark Playboy in their said activities that said mark has become and is identified by the general public with plaintiff's products and services.

## C. Defendants' Use of the Name "Playboy"

11. Since 1967 defendants Victor and Arthur Brincat have operated five unincorporated businesses in or near San Mateo, California under the name Playboy: (1) Playboy Auto Manufacturing Company, (2) Playboy Manufacturing Company, (3) Playboy Fiberglass Manufacturing Company, (4) Playboy Auto Upholstery Company and (5) Playboy Body Shop.

12. Said businesses have marketed a variety of products and services under the name Playboy, including (1) dune buggies (which are a fourwheel sports vehicle competitive with sports cars and racing cars and which are usually constructed from a Volkswagen frame and engine and a sports car-type fiberglass body), (2) dune buggy bodies, (3) dune buggy tops and accessories, (4) small boats, (5) automobile upholstery, (6) automobile body repairs and general automotive repair services and (7) automobile towing. The products and services marketed by defendants have ranged upward in price from approximately two dollars for such items as automotive side lights.

13. Defendants have sold products under the Playboy name in commerce and have advertised and sold under the name Playboy. The various buildings in which defendants did business have borne the name Playboy.

14. Prior to selecting the name Playboy for said businesses each of the defendants was well aware of HMH, of PCI and of their activities conducted under the name Playboy. Defendant Victor Brincat was a Playboy Club keyholder prior to the time the San Francisco Playboy Club opened in 1965 and had been in the London, England Playboy Club prior to 1967. He had also purchased *Playboy* magazine from time to time and has been aware of it from the time it began publishing. Defendant Arthur Brincat was also aware of the magazine and of the Playboy Clubs prior to going into business under the name Playboy.

15. On May 28, 1968 defendant Victor Brincat contacted attorney William M. Hynes at the latter's office in San Francisco, California. In that meeting. Mr. Brincat authorized Mr. Hynes to conduct a search of the records of the United States Patent Office for prior registrations of the name Playboy. Mr. Hynes caused such a search to be made and, by letter dated August 27, 1968, advised defendant Arthur Brincat of the results of said search, as follows:

"The mark PLAYBOY appears to be jealously guarded by HMH Publishing Co. Particular attention is directed to Registration No. 600,018 for vehicles, in which HMH Publishing Co. successfully opposed use of the mark PLAYBOY. We would recommend that you avoid use of the PLAYBOY mark on your product, substituting another mark therefor."

Notwithstanding said advice, defendants have continued to do business under the name Playboy.

16. Subsequent to receiving the letter of August 27, 1968 defendants Arthur

and Victor Brincat utilized a tow truck in connection with the business they operated under the name Playboy Body Shop. A sign placed on said tow truck stated:

"PLAYBOY BODY SHOPS, INC.
FOR QUICK AS A BUNNY SERVICE"

Another sign on said truck stated:

"BUNNY TOWING
QUICK AS A BUNNY 24 HR. SERVICE"

Use of said sign and defendants' aforesaid knowledge of *Playboy* magazine and Playboy Clubs establish that defendants adopted and have used the name Playboy with the deliberate and wrongful intent of trading upon and taking advantage of HMH's and PCI's good will and good name.

17. As a result of defendants' aforesaid use of the name "Playboy" for their aforesaid businesses, members of the public are likely to conclude that defendants' businesses are somehow connected with, sponsored by and under the control of plaintiffs.

18. Plaintiffs have given defendants notice that the use by them of the name Playboy constitutes infringement of the rights of plaintiffs in and to said trademarks and constitutes unfair competition with plaintiffs. Notwithstanding said notice, defendants have continued to use the name Playboy for identifying defendants' aforesaid businesses.

19. The use by defendants of the name Playboy is and has been without authority or consent of HMH or PCI. Such use constitutes and has constituted an appropriation to, and trading on by, the defendants of the good will, fame and reputation of plaintiffs and related companies. Such use by defendants of the name Playboy, infringed, infringes and will infringe plaintiffs' said name and trademarks. Such use is likely to cause confusion, mistake and deception of the public by causing the public to suppose that plaintiffs or related companies have licensed, sponsored, recommended, approved or are somehow connected with the defendants or with their businesses, or that plaintiffs or related companies control the nature and quality of the services rendered by defendants.

20. Unless defendants' use of the name Playboy is enjoined by this Court, confusion, mistake, deception, and the likelihood thereof, will continue.

21. Plaintiffs have no adequate remedy at law.

## CONCLUSIONS OF LAW

1. Federal jurisdiction exists in that this is an action for the infringement of trade and service marks registered with the United States Patent Office, to which is joined a substantial and related claim for unfair competition: 28 U.S.C. § 1338. Federal jurisdiction also exists by reason of the complete diversity of citizenship of the parties and the fact that the amount in controversy exceeds $10,000: 28 U.S.C. § 1332. The value of HMH's marks here in issue is in excess of $10,000, exclusive of interest and costs. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391.

2. The Lanham Act, 15 U.S.C. § 1114 (1) (a) provides that it is unlawful to use another's registered trademark when "such use is likely to cause confusion, or to cause mistake, or to deceive." Section 1116 of the Lanham Act authorizes injunctions to restrain violation of the rights of the owner of registered marks.

3. A mark is entitled to protection when it is identified with or associated with its owner. This identification is referred to as "secondary meaning." See, e. g., North American Aircoach Systems, Inc. v. North American Aviation, Inc., 231 F.2d 205, 209 (9th Cir. 1955); Continental Motors Corp. v. Continental Aviation Corp., 375 F.2d 857, 859, 861 (5th Cir. 1967); 3 Callman, Unfair Competition, Trademarks and Monopolies, par. 77.2, p. 345 (1969). Secondary meaning is inferred by courts from evidence of the trademark owner's advertising and sales. Anheuser-Busch, Inc. v. Bavarian Brewing Co., 264 F.2d 88, 91 (6th Cir. 1959); Keller Products

v. Rubber Linings Corp., 213 F.2d 382, 384 (7th Cir. 1954); Douglas Laboratories Corp. v. Coppertan, Inc., 210 F.2d 453, 456 (2d Cir. 1954).

4. HMH, PCI and related companies have, by virtue of their very extensive advertising of the name Playboy and of the Rabbit Head design and very extensive sales under said name and marks, become identified and associated with each of said marks and with the joint use of said marks.

5. Defendants' use of the name Playboy in connection with their various businesses first occurred long after the commencement of continuous use of the name Playboy by HMH, PCI and related companies, both in the San Francisco Bay area and throughout the United States.

6. Use of the name Playboy by defendants is likely to cause confusion, mistake and deception of the public by causing the public to suppose that plaintiffs or related companies have licensed, sponsored, recommended, approved or are somehow connected with the defendants or with their businesses or that plaintiffs or related companies control the nature and quality of the services defendants render.

7. The plaintiffs in a trademark infringement action are not required to prove that the defendants intended to take advantage of plaintiffs' good will and good name, but where the evidence does show such an intent it raises a presumption that deception and confusion resulted. Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F. 2d 149, 158–159 (9th Cir. 1963). In this case the evidence clearly established such an intent.

8. Use of the name Playboy by defendants has, is and will continue to violate the rights of HMH in and to the mark Playboy and to the good will symbolized thereby.

9. Defendants have infringed and are infringing HMH's registered trademarks by the use by defendants of said mark.

Such infringement is in violation of the Lanham Act.

10. The defendants have engaged in and are engaging in unfair trade practices and unfair competition against the plaintiffs. Such unfair trade practices and unfair competition is in violation of Section 14330 of the California Business and Professions Code.

11. Defendants' infringing use of the name Playboy will, if permitted to continue, injure plaintiffs' business reputation and dilute the distinctive quality of plaintiffs' said trade and service marks. Such injury and dilution are in violation of Section 14330 of the California Business and Professions Code.

12. Plaintiffs have no adequate remedy at law.

## JUDGMENT

In accordance with the foregoing Findings of Fact and Conclusions of Law,

It is ordered, adjudged and decreed:

1. The defendants, their directors, officers, agents, servants, employees and successors and assigns, and all those in concert or participation with said persons or entities, and each of them, should be and are hereby permanently restrained and enjoined from this date from:

(a) Using, directly or indirectly, the trademark and service mark Playboy, the Bunny Head mark, or any similar trademark or service mark in connection with the operation of their businesses, or in connection with the advertising of their said businesses, or any other businesses whatsoever;

(b) Using Playboy (in any phonetic spelling or misspelling) or any mark or name similar thereto in connection with any business; or

(c) Performing any acts having the effect of, directly or indirectly, representing that any business operated or owned by defendants, or any of them, is connected with plaintiffs or is sponsored, approved, recommended or licensed by plaintiffs.

2. The defendants are required to deliver to the plaintiffs' attorneys within one week from the date of judgment herein to be impounded or destroyed by plaintiffs, all signs, labels, advertising, painted or written symbols and any and all articles containing thereon or therein the word Playboy, or to show satisfactory evidence that no such items remain in defendants' possession or control.

3. The defendants shall pay to plaintiffs their costs of suit herein and reasonable attorneys' fees in the amount of $3,000.