PLAYBOY ENTERPRISES INTER-NATIONAL, INC., a Delaware corporation, Plaintiff,

v.

Deborah MULLER, an individual; Paul Muller, an individual; P.M. Enterprises, Inc., a Nevada corporation; and Sexybellys.com, an entity of unknown origin, Defendants.

No. CVS030919–KJD–(RJJ).

United States District Court, D. Nevada.

March 29, 2004.

Rodney M. Jean, Gregory R. Gemignani, Lionel Sawyer & Collins, Las Vegas, NV, Gregory D. Phillips, Cody W. Zumwalt, Howard, Phillips & Anderson, Salt Lake City, UT, for Plaintiff, Playboy Enterprises International, Inc.

### DEFAULT JUDGMENT AND PERMANENT INJUNCTION

DAWSON, District Judge.

Upon motion of Plaintiff Playboy Enterprises, Inc. ("Playboy") for entry of judgment by default against Defendants Deborah Muller, Paul Muller, P.M. Enterprises, Inc., and Sexybellys.com, and upon this Court's review and consideration of Plaintiff's Memorandum in Support of Motion for Default Judgment, the Declaration of Cody Zumwalt, and the pleadings on file, this Court enters the following:

### FINDINGS OF FACT

Defendants were served properly with the Summons and Complaint in this matter, the Affidavit of Gregory R. Gemignani in Support of Request for Entry of Default, the Default Certificate, and Plain-

tiff's Motion for Default Judgment. Defendants have failed to plead or otherwise defend in this action and are in default. This Court has subject matter jurisdiction over this dispute and personal jurisdiction over the parties.

This lawsuit arises out of Defendants' infringement and dilution of Playboy's world famous RABBIT HEAD DESIGN and PLAYBOY trademarks (the "Playboy Marks"). Playboy first obtained trademark registrations for such marks in the 1950s and, as a consequence of Playboy's efforts and ingenuity, such marks are now among the most famous and well-recognized trademarks in the entire world. These marks are associated by the public exclusively with Playboy, including Playboy's internationally acclaimed *Playboy* magazine. The value of these marks is immeasurable.

For many years preceding the events at issue in this suit, Playboy, through its exclusive licensee, has sold jewelry under its PLAYBOY and RABBIT HEAD DESIGN marks. Playboy has numerous registrations and pending registrations for these marks covering such goods.

Defendants operate a website located at *www.sexybellys.com* from which Defendants sold numerous pieces of body jewelry either in the exact shape, or bearing the exact likeness, of Playboy's RABBIT HEAD DESIGN. Defendants promoted such jewelry as "Playboy" jewelry and prominently represented that they were a "Playboy® authorized dealer." Playboy recognizes no such designation and the goods sold by Defendants were not authorized.

Playboy filed this suit after learning that Defendants, despite having been notified by Playboy that their actions were unlawful and despite having committed in writing to honor Playboy's trademarks and cease from their unlawful activity, had added additional, blatantly infringing goods to the already substantial collection of such infringing goods that were for sale on their Internet website. *See* Complaint at ¶ 4 *(Docket Entry No. 1)*. Playboy's Complaint alleges claims for federal trademark infringement, federal trademark dilution, and false designation of origin and false advertising under Sections 43(c), 32(1), and 43(a) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), and trademark infringement under common law. Among other things, Playboy seeks an order preventing Defendants from further infringing and misappropriating its trademarks, permitting seizure of Defendants' counterfeit products and the means for producing them, and awarding Playboy its attorney fees and costs.

Entry of a default judgment enjoining Defendants from further infringing conduct and awarding Playboy its attorney fees and costs is now warranted. The facts alleged in the Complaint, substantiated by documentary evidence of record, establish Defendants' liability for willful violation of the Lanham Act.

## CONCLUSIONS OF LAW

### A. Default Judgment Standard.

■ The decision to enter a default judgment is within the district court's discretion. *Benny v. Pipes,* 799 F.2d 489, 493 (9th Cir.1986). In cases where a defendant is served with a complaint and fails to respond in any way, Rule 55(a) of the *Federal Rules of Civil Procedure* permits the court to rule that the defendant is in default. *Id.* In this case, Defendants' failure to respond to Playboy's Complaint is grounds for this Court to enter a default judgment.

■ "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true."

*Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir.1977); *Visioneering Constr. v. U.S. Fidelity & Guar.,* 661 F.2d 119, 124 (9th Cir.1981).

In accordance with Rule 54(c) of the *Federal Rules of Civil Procedure,* which provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment," this Default Judgment and Permanent Injunction is based on the relief Playboy prays for in its Complaint, namely, permanent injunctive relief and an award of its attorney fees and costs. *See* Complaint ¶¶ 1–2 and 5, of relief section (pp. 12–14).

**B. The Facts Alleged, Substantiated by Evidence of Record, Establish Defendants' Liability for Playboy's Federal Claims.**

Playboy's Complaint sets forth claims for federal trademark infringement, trademark dilution, and false designation of origin under the Lanham Act. 15 U.S.C. §§ 1114(1), 1125(c), and 1125(a). The facts alleged in the Complaint, substantiated by evidence of record, conclusively establish Defendants' liability for these claims.

**1. Playboy's Claim for Trademark Infringement is Established.**

■■ Playboy has conclusively demonstrated the two elements necessary to establish Defendants' liability for federal trademark infringement, namely: (1) that Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of a "registered mark" in connection with the sale, offering for sale, distribution, or advertising of any "goods or services" (2) on or in connection with which such use was likely to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. § 1114(1)(a). Section 1114 expressly proscribes the use of a registered mark in connection with "the sale, offering for sale, distribution, or advertising of any goods or services." *Id.* at § 1114(1)(a).

**A. Defendants Clearly Used a Registered Mark without Authorization.**

Evidence of record shows that Defendants used exact or near counterfeits of registered trademarks on goods in direct competition with Playboy's own. *See* Complaint at ¶¶ 10–14. Playboy owns numerous valid and legally protectable registrations for its RABBIT HEAD DESIGN trademark, including Registration Nos. 2177521 (covering jewelry); 2719885 (covering goods, including money clips and key chains); 2666917 (covering goods, including tattoos and stickers); and 2626133 (covering goods, including ornaments). The RABBIT HEAD DESIGN set forth in these Trademark Registrations is depicted below:

*Complaint* at ¶¶ 10–11. Playboy similarly holds numerous valid and legally protectable registrations for its PLAYBOY mark, including Registration Nos. 2706976 (covering belly chains, body piercing jewelry, and earrings) and 2181438 (covering jewelry, including rings). *Id.* at ¶ 12.

Subsequent to Playboy's use of its RAB-BIT HEAD DESIGN mark and without Playboy's consent, Defendants began advertising and selling body jewelry, such as, for example, naval rings and tongue bars, in the shape, or bearing the likeness, of Playboy's RABBIT HEAD DESIGN on their website located at *www.sexybellys.com*. Displayed below are exemplars of Defendants' body jewelry misappropriating the RABBIT HEAD DESIGN trademark:

*Id.* at ¶ 18. Defendants prominently advertised and referred to themselves on this website as a "Playboy® authorized dealer." *See* Complaint at ¶ 19 and Exhibit A thereto. Thus, Defendants have used reproductions, counterfeits, copies, or colorable imitations of the Playboy Marks in connection with their advertisement and sale of knock-off jewelry. Indeed, in touting themselves as an "authorized Playboy® dealer," Defendants went so far as to include the "®" symbol after "Playboy" in order to strengthen the reference to Playboy.

Defendants not only used and displayed the Playboy Marks without authorization, but willfully persisted in doing so after being notified that their use was unlawful and furnishing Playboy's counsel with a written commitment that they would immediately stop. *Id.* at ¶¶ 4 and 19–21.

### B. Consumer Confusion is Established as a Matter of Law.

Given the strength of the Playboy Marks, consumer confusion is established by Defendants' unauthorized use of the Playboy Marks as a matter of law. Numerous federal courts have previously recognized that because of the strong association between the Playboy Marks and Playboy in the minds of the consuming public, any unauthorized commercial use of such marks is likely to cause confusion and is, therefore, unlawful. *See, e.g., Playboy Enters. v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272, 1274 (9th Cir.1982) (finding defendants' sale of jeans bearing labels embroidered with counterfeits of Playboy Marks constituted trademark infringement and unfair competition and awarding Playboy attorney fees and damages equal to defendants' profits); *HMH Pub. Co. v. Brincat,* 342 F.Supp. 1275 (N.D.Cal.1972) (finding defendants' unauthorized use of Playboy Marks in connection with various businesses infringed Playboy Marks and entering injunction barring such use), *aff'd in relevant part,* 504 F.2d 713 (9th Cir.1974).

The likelihood of confusion is to be presumed, moreover, from the fact that Defendants knowingly infringed the Playboy Marks. "In the Ninth Circuit, a defendant's knowing adoption of a mark similar to the plaintiff's raises a presumption of confusion." *Sega Enters. Ltd v. MAP-HIA*, 948 F.Supp. 923, 937 (N.D.Cal.1996); *see also AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir.1979) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."); *accord Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987).

### 2. Playboy's Claim for Trademark Dilution is Established as a Matter of Law.

 To prevail on a claim for trademark dilution, a plaintiff need only show "that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir.1998); *see also Porsche Cars North America, Inc. v. Manny's Porshop, Inc.*, 972 F.Supp. 1128, 1132 (N.D.Ill.1997) ("plaintiffs need only show the mark is famous and defendants' use is likely to cause dilution"). A plaintiff need not show that it is in competition with the defendant or that customers are likely to be confused. *Porsche Cars* at 1132 (holding dilution "prohibits even innocuous use").

The famousness of the Playboy Marks has been previously and explicitly recognized by the Ninth Circuit, as well as numerous other federal courts. *See, e.g., Playboy Enters. v. Baccarat Clothing Co., Inc.*, 692 F.2d at 1274 (finding "PLAYBOY and RABBIT HEAD design trademarks are strong and distinctive and have acquired great fame"); *Playboy Enters., Inc. v. Chuckleberry Pub., Inc.*, 687 F.2d 563, 566–67 (2d Cir.1982) (upholding "district court's finding that the 'Playboy' mark was distinctive and enjoyed wide recognition" as indisputable and finding " 'Playboy' is a mark of great value, due in large part to the long standing success of PLAYBOY magazine"); *Playboy Enters., Inc. v. Frena*, 839 F.Supp. 1552, 1560 (M.D.Fla.1993) (finding that Playboy's marks "are well known marks" and "have acquired great distinctiveness among consumers, and are therefore entitled to a high degree of protection"), *superceded by statute in part; Playboy Enters., Inc. v. U.S. Customs Service*, 959 F.Supp. 11, 13 (D.D.C.1997) (finding "Rabbit Head Design mark is recognized throughout the world"); *Playboy Enters., Inc. v. P.K. Sorren Export Co. Inc.*, 546 F.Supp. 987, 994 (D.C.Fla.1982) (finding that "[b]oth marks are well-known and widely associated with PEI's products" and "that these marks are strong marks, entitled to broad protection"); *HMH Pub. Co., Inc. v. Brincat*, 342 F.Supp. 1275, 1281 (N.D.Cal.1972) (finding Playboy has, "by virtue of [its] very extensive advertising of the name Playboy and of the Rabbit Head design and very extensive sales under said name and marks, become identified and associated with each of said marks and with the joint use of such marks").

 Dilution through blurring, which "occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product," indisputably occurs when a famous trademark is used in commerce without authorization on goods in competition with those of the famous trademark hold-

er. *Panavision*, 141 F.3d 1316 at 1326 n. 7; *see also Ford Motor Co. v. Lloyd Design Corp.*, 184 F.Supp.2d 665, 680 (E.D.Mich.2002) ("The closer the junior user comes to the senior's area of commerce, the more likely it is that dilution will result from the use of a similar mark.").

### 3. Playboy's Claim for False Designation of Origin is Established.

■ Playboy's claim for false designation of origin and false advertising requires proof only of the likelihood of confusion. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.1988) (" 'the ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks' "). Thus, Playboy's demonstration of a likelihood of confusion establishes not only Playboy's trademark infringement claim, but also its claim for false designation of origin and false advertising.

Accordingly, under the facts shown by the Complaint, Playboy has established the elements of each of its federal claims.

### C. Playboy is Entitled to an Injunction Barring Defendants' Use or Display of the Playboy Marks.

■ Under the Lanham Act, when a trademark owner's rights are being violated, that party is entitled to an injunction. 15 U.S.C. § 1116(a); *Century 21 Real Estate Corp.*, 846 F.2d at 1180–81 ("Injunctive relief is the remedy of choice for trademark and unfair competition cases. . . . Where a name, whether registered as a trademark or not, enjoys an international reputation, the use of any colorable imitation will be enjoined pendente lite under 15 U.S.C. § 1125(a) if the use of the colorable imitation is for a similar service."). Thus, in this case, Playboy should be granted the injunctive relief that it has requested in the Complaint, specifically, an order enjoining Defendants from making any unauthorized use of the Playboy Marks or otherwise deceptively or unfairly competing with Playboy. Complaint at ¶¶ 1 and 3, or relief section (pp. 12–13).

### D. An Award of Attorney Fees under the Lanham Act should Enter.

■ The Lanham Act authorizes this Court to award "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). Attorney fees are available "in trademark infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Properties, Inc. v. Rio Intern., Interlink*, 284 F.3d 1007, 1023 (9th Cir.2002) (upholding award of attorney fees under § 1117(a) based on allegation that defendant acted "knowingly, maliciously, and oppressively, and with an intent to . . . injure" deemed admitted by virtue of defendant's default); *see also Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9th Cir.2003) (holding "issue is not necessarily one of bad faith: willful or deliberate infringement will suffice" and upholding award of attorney fees under § 1117(a) when, among other things, defendant "agreed to cease using the 'Carquake' mark and then reneged on that agreement").

Entry of an award of attorney fees is appropriate here based on Defendants' willful conduct, as demonstrated by, among other things, the fact that Defendants continued to sell infringing merchandise after having been contacted by Playboy and promising that they would stop. *See Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir.1982) (holding trial court abused its discretion in not awarding Playboy its attorney fees in "light of PEI's well supported arguments and the trial court's

finding that the defendants deliberately arranged to obtain counterfeit goods and to sell such goods as genuine PEI products").

### ORDER AND PERMANENT INJUNCTION

Accordingly, IT IS HEREBY ORDERED that an entry of judgment by default be entered in this action in favor of Playboy, against Defendants, as follows:

A. Defendants, and all of Defendants' agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, are permanently enjoined from, without permission from Playboy:

(1) using Playboy's Registered Trademarks, any colorable imitations thereof, or any marks confusingly similar thereto;

(2) importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of the RABBIT HEAD DESIGN mark or the PLAYBOY mark;

(3) using any simulation, reproduction, counterfeit, copy, or colorable imitation of the RABBIT HEAD DESIGN mark or the PLAYBOY mark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any service or product, in such fashion as to relate or connect, or tend to relate or connect, such service or product in any way to Playboy, or to any goods sold, manufactured, sponsored, approved by, or connected with Playboy;

(4) using any false designation of origin or false description, or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed, or sold by Defendants is in any manner associated or connected with Playboy, or is sold, manufactured, licensed, sponsored, approved, or authorized by Playboy;

(5) transferring, consigning, selling, shipping, or otherwise moving any goods, packaging, or other materials in Defendants' possession, custody, or control bearing a design or mark substantially identical to any or all of the RABBIT HEAD DESIGN mark or the PLAYBOY mark;

(6) engaging in any other activity constituting unfair competition with Playboy, or constituting an infringement of any or all of the RABBIT HEAD DESIGN mark or the PLAYBOY mark, or of Playboy's rights in, or to use or exploit, any or all of the RABBIT HEAD DESIGN mark or the PLAYBOY mark; and

(7) instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (7) above.

B. Defendants shall pay Playboy for the attorney fees and costs incurred by Playboy in the prosecution of this case pursuant to 15 U.S.C. § 1117(a), in an amount to be determined following submission of a fee affidavit by Playboy, which shall be filed within 10 days after

the entry of this Default Judgment and Permanent Injunction, with any objection to be filed by Defendants 10 days thereafter.

SO ORDERED.