111 F.3d 138
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jordan COOPER, Individual Proprietor of Revelation Records,
Plaintiff-Appellant,
v.
REVOLUTION RECORDS, INC., a Delaware corporation; and Giant
Records, a general partnership, Defendants-Appellees.
 No. 96-55927.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 12, 1997.
Decided April 21, 1997.
 
 Before: O'SCANNLAIN, LEAVY, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jordan Cooper, the individual proprietor of Revelation Records (Revelation Records), appeals the district court's denial of a preliminary injunction barring Giant Records d/b/a/ Revolution (Revolution) from using "Revolution" as a trademark/trade name. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.
 
 
 3
 A preliminary injunction is appropriate if the moving party shows a combination of probable success on the merits and the possibility of irreparable harm if the relief is not granted. See International Jensen v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir.1993). A district court's order denying preliminary injunctive relief is subject to limited review. The denial of a preliminary injunction will be reversed "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." Does 1-5 v. Chandler, 83 F.3d 1150, 1152 (9th Cir.1996).
 
 
 4
 Revelation Records contends that the district court erred in concluding that it failed to show a likelihood of confusion. The district court made numerous findings concerning likelihood of confusion, applying and weighing the factors enunciated in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir.1979). After reviewing the applicable law and the record before us, we find that there was neither abuse of discretion nor clear error.[1] See International Jensen, 4 F.3d at 822; see also E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290-91 (9th Cir.1992) ("The presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion."). While the two names taken alone are very similar, the Revelation Records name has the word "Records" as part of it whereas Revolution does not. Moreover, the two logos are quite different and serve to further differentiate the names.
 
 
 5
 Revelation Records also contends that the district court abused its discretion in concluding that it failed to show the possibility of irreparable harm. The district court misapplied the doctrine of reverse confusion when it concluded that "due to [Revolution's] anticipated massive advertising and market saturation, customer confusion could benefit [Revelation Records] by generating more sales." This reverse customer confusion is a type of harm actionable under federal trademark law. See American Trading, Inc. v. Russ Berrie & Co., 966 F.2d 1284, 1287 (9th Cir.1992). However, because the district court did not abuse its discretion in concluding that Revelation Records had not shown a likelihood of customer confusion, it also did not abuse its discretion in concluding that Revelation Records had not shown a possibility of irreparable harm.
 
 
 6
 The district court did not err in concluding that Revelation Records is not likely to succeed in its dilution claim under the California Business and Professions Code. See Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir.1991) (to prevail on dilution claim, plaintiff needs to show that its business reputation is likely to be injured, or that the distinctive value of the mark is likely to be diluted); Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1538 (9th Cir.1988) (stating that California's anti-dilution statute is designed to protect only strong, well-recognized marks).
 
 
 7
 Accordingly, we affirm the district court's denial of Revelation Records' motion for a preliminary injunction.
 
 
 8
 AFFIRMED.
 
 KLEINFELD, Circuit Judge, dissenting:
 
 9
 I respectfully dissent.
 
 
 10
 The majority disposition says, and I agree, that the district court erred in two respects. First, as we note in footnote 2, "contrary to the district court's ruling, failure to register does not mean that the mark is inherently weak." Second, we say "[t]he district court misapplied the doctrine of reverse confusion when it concluded that 'due to [Revolution's] anticipated advertising and market saturation, customer confusion could benefit [Revelation Records] by generating more sales.' This reverse customer confusion is a type of harm actionable under federal trademark law."
 
 
 11
 Because the district court erred in these two respects, we should at the least remand so that the district court can reevaluate the case in light of the corrections we have made to the controlling legal principles. These two aspects of the case were significant to the result. They may change the weight the district court gives to the factors on each side.
 
 
 12
 I would reverse. Probability of success on the merits tips so strongly toward Revelation, on this record, that the injunction should have been granted. To maintain an action for trademark infringement and unfair competition, a plaintiff must prove that the defendant's use of the same or similar mark would create a likelihood of consumer confusion. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir.1985). If the plaintiff succeeds, we presume irreparable harm. Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n. 3 (9th Cir.1989). We also balance hardships to see if they tip sharply in the moving party's favor. Metro Publishing, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir.1993). The district court concluded there was no likelihood of confusion, so neither gave Revelation the benefit of the presumption of irreparable harm nor balanced hardships.
 
 
 13
 The district court held that the Revelation mark was in fact distinctive. Nevertheless, the district court held that "[p]laintiff did not register the name "Revelation" or "Revelation Records" with the U.S. Patent and Trademark Office.... Accordingly, no presumption of validity attaches." As the majority points out, this holding was incorrect. "To recover for a violation of this section it is not necessary that a mark or trade-mark be registered." New West Corp. v. NYM Co., Inc., 595 F.2d 1194, 1198 (9th Cir.1979).
 
 
 14
 AMF explains that similarity of marks can be tested on three levels: sight, sound and meaning. 599 F.2d at 351. As the majority points out, the two logos do not look the same. "Revelation" and "revolution" do have related meanings, however: radical change. Webster's Third New International Dictionary offers a variety of definitions for "revelation," including "the disclosing or discovering to others of what was before unknown to them." Among the definitions of revolution is "a sudden, radical, or complete change [as] in thought."
 
 
 15
 Most important, the two words sound the same--so much the same that at the oral argument, we judges confused the two several times. "Slight differences in the sound of trademarks will not protect the infringer." AMF, 599 F.2d at 352 (quoting G.D. Searle & Co. v. Chas. Pfizer & Co., 265 F.2d 385, 387 (7th Cir.1959)).
 
 
 16
 The sound of the mark is extremely important in this case. Record store owner Nick Salimeno states in his affidavit that "[b]ased on my experience as a record store owner, manager and buyer, I have found that my retail customers do in fact make purchasing decisions based on the name and identity of the record label itself." This suggests that the name, not the picture illustrating the name, is the more important component of the mark, and thus, the verbal similarity, as opposed to the lack of visual similarity, is most critical in evaluating the factor.
 
 
 17
 Aural similarity is likely to cause customer confusion to the detriment of Revelation. In a niche market such as alternative rock, special orders are a significant portion of the business, as the number of letters making special orders to Revelation reveal. Having the correct oral or written name of the label seems important to getting the order right. For example, Jordan Cooper, president and owner of Revelation Records, stated in an affidavit that consumers regularly contact Revelation to purchase the entire collection of Revelation's releases. It would be difficult to contact Revelation directly if a listener confused the two names. Based on the affidavits, some record purchasers who like Revelation's alternative style are likely to walk to the counter of a record store and ask for Revelation disks in stock, or to order Revelation disks. But not if they've heard or seen a lot of ads for Revolution and can't keep the names straight. If a consumer wants recordings by "Texas Is The Reason," which has recorded on both labels, a correct order seems nearly hopeless.
 
 
 18
 The word "Records" on the end of Revelation's name is not a significant distinguishing factor. I don't even know whether RCA, Decca, Columbia, Deutsche Grammaphon, or any of the other labels I have special ordered have "Records" at the end of the name, and doubt that many other people who step up to the counter to place an order, or look through the bins, do either. If the clerk said "is it on Columbia Records or Columbia?" nearly all consumers would say "I don't know." Moreover, Mr. Cooper's affidavit states that Revelation Records was sometimes known as "Rev," without the "Records" attached. John Nutcher, Director of Marketing and Promotion for Revelation Records, uses the terms "Revelation" and "Revelation Records" interchangeably in his affidavit. Revelation submitted into the record numerous letters requesting more information about Revelation releases that refer to the company as "Revelation" or "Rev" without the "Records" portion of the name attached.
 
 
 19
 Despite Revolution's argument that the two marks are dissimilar because Revelation's includes the word "Records," the record includes an advertisement for an album by "Revolution Records!" It is in Revolution's Super Deluxe ad, which says "On Revolution Records." Did they mix up their own name (as we did)? Did the advertising agency? Whatever the reason, the word "Records" does not make the marks distinctive.
 
 
 20
 Evidence of actual confusion is unusually strong in this case, as the above examples show. Revolution could not even keep its own name straight in its own Super Deluxe ad. The district court's conclusion to the contrary perhaps results from the mistake of law, correctly identified by the majority, on reverse confusion. The Cooper and Nutcher affidavits relate an incident where a national trade publication confused the names, and an advertising representative called Revolution looking for Mr. Nutcher. Unfortunately, Revelation lost an important advertising opportunity as a result, presumably costing sales. Record stores have called Revelation for information about purchasing albums by Revolution's artists, so in all likelihood have called Revolution instead of Revelation at least as often. There is evidence that in the process of bands changing labels the similarity between the names has caused confusion for two third parties. Toni Smith, head buyer for the West Coast at Caroline Distribution Company, states in her affidavit that she has "corrected several people who have confused the two names."
 
 
 21
 The district court's error regarding reverse confusion, which the majority points out, is quite important to the resolution of this case. The district court concluded that to the extent customers confused the names, it would likely benefit Revelation, the older and smaller user of the mark, because people looking for Revolution product would mistakenly buy Revelation's. But Revelation is entitled to the integrity of its own mark. People who like more mainstream music are likely not to like theirs, and not to be repeat buyers. Old Revelation customers who mistakenly buy Revolution albums, a more likely phenomenon based on Revolution's marketing power, are likely to think that Revelation has "sold out" and "gone mainstream," and lose interest in Revelation products. Those are the business risks a preliminary injunction based on confusingly similar names is supposed to prevent.
 
 
 22
 Revelation need not prove actual and substantial loss of business before receiving relief from trademark infringement, however. The likelihood of lost business is what justifies preliminary injunctive relief. Though the district court cited Sunenblick v. Harrell, 895 F.Supp. 616 (S.D.N.Y.1995), controlling circuit authority takes a different view of "evidence of actual confusion." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988); Academy of Motion Picture Arts v. Creative House, 944 F.2d 1446, 1455 (9th Cir.1991); AMF, 599 F.2d at 352 ("AMF introduced evidence that confusion had occurred both in the trade and in the mind of the buying public. A substantial showing of confusion among either group might have convinced the trial court that continued use would lead to further confusion."). Examples of where attorneys misspeak at judicial hearings, Century 21, 846 F.2d at 1179, and inaccurate newspaper articles, Academy of Motion Picture Arts, 944 F.2d at 1456, have constituted evidence of actual confusion in this circuit and neither involved an actual customer. When Mr. Cooper signed his affidavit, Revolution had not yet put product in the stores, so no ultimate customer confusion could have been proved, but the likelihood that it would take place as soon as product hit the stores was proved.
 
 
 23
 The confused parties in the examples Revelation cites were insiders in the music business. It seems, therefore, a near certainty that less-informed consumers would be confused. After all
 
 
 24
 The law is not made for the protection of experts, but for the public--that vast multitude which includes the ignorant, the unthinking and the credulous, how, in making purchases, do not stop to analyze, but are governed by appearance and general impressions.
 
 
 25
 Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149, 156 (9th Cir.1963).
 
 
 26
 It is not necessary that Revelation show actual confusion to obtain a preliminary injunction in this circuit, Academy of Motion Picture Arts, 944 F.2d at 1456, but the fact that it did so is strong evidence that a preliminary injunction was appropriate here. See AMF, 599 F.2d at 353 (actual confusion evidence is hard to obtain so where such evidence exists or circumstances suggest it is available, factor should be weighed heavily); World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 489 (5th Cir.1971) ("while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof"). Thus, not only did the district judge commit legal error in failing to understand what constitutes "actual confusion," but that error caused her to weigh against Revelation a virtually dispositive factor in its favor.
 
 
 27
 We have said that "[w]hen an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir.1993); Eclipse Associates Ltd. v. Data General Corp., 894 F.2d 1114, 1118 (9th Cir.1990); AMF, 599 F.2d at 354. That rule suggests that intent to deceive should have been presumed against Revolution.
 
 
 28
 The facts tend to suggest a more benign motive, but not one that cuts in favor of Revolution. It looks as though Revolution did a search of registered trademarks, did not find Revelation because it was not registered, and that the outside lawyers and management failed to act properly on the legal significance of the fact that Revolution had actual knowledge of Revelation's unregistered mark. Though not as bad as an intent to deceive, this more benign theory to explain Revolution's conduct leaves the balance of hardships tipped very sharply against Revolution. They're not entitled to use a confusing mark based on their own failure to coordinate their own people who had factual knowledge with their own people who had legal knowledge.
 
 
 29
 The Giant label had languished in the 1990s and its image had become "tarnished." Melissa Worth, Revolution's senior creative executive, states in her affidavit that Giant's name change was intended to be part of a complete image overhaul for the company. Giant purchased the "Revolution" name from a third party, and Giant executives liked the acquisition because it reflected the "radical change" they contemplated. Worth was unaware of Revelation's existence, but Giant's head of business and legal affairs, Lawrence Jacobson, who also participated in choosing Giant's new name, was well aware. Jacobson says he participated in virtually all the meetings at which executives discussed the name change.
 
 
 30
 Others at Giant besides Jacobson became aware of Revelation's existence prior to launching the new name when Jordan Cooper objected to Giant's use of name so similar to his company's mark. Cooper's affidavit states:
 
 
 31
 First, in late January of 1996, before Giant had changed its name, Tim Reilly [sic] of Giant called me and said that Giant was interested in signing one of Revelation's bands, "Texas Is The Reason". John Nutcher, Revelation's director of marketing was present in my office during the phone call. In response, I mentioned that I had heard rumors that Giant was thinking of changing its name to Revolution, and I told Mr. Reilly that I thought the name was too close to Revelation's name. He apologized, and said that he and others had encouraged senior management at Giant not to change the name to Revolution because of the existence of Revelation.
 
 
 32
 Riley's affidavit disputes the portion of Cooper's related to the apology and Riley's efforts to convince Giant to adopt another name. Yet, Riley's affidavit confirms that he was aware of Revelation's mark and spends several pages recounting his purported explanation to Cooper of how Giant believed the two marks were different. Apparently someone at Giant had given this a great deal of thought. At a later meeting, but again before Revolution introduced its mark, Cooper met with Riley and two of his colleagues from Revolution and again discussed the similarity or lack thereof between the two marks. Cooper says:
 
 
 33
 Based on our discussions, on our general reputation in the industry and our listing in trade journals such as CMJ, I am certain that Giant has been aware of Revelation for some time and it is inconceivable that Giant was not aware of Revelation at the time it chose to change its name to Revolution.
 
 
 34
 At oral argument, Cooper's suspicions were confirmed; counsel for Revolution admitted that Giant executives had been aware of Revelation's mark prior to changing its name.
 
 
 35
 Giant did a trademark search for "Revolution" in the relevant industries and came up with no such registered mark. But that is irrelevant because ample evidence supplemented by admissions at argument show that Giant executives knew of the Revelation mark. The issue, under controlling law, is whether Giant knew of Revelation's use of the mark, not whether Revelation had registered it. Possibly this was legal error by Revolution in being unaware of the controlling legal principle that an unregistered mark is not ipso facto unprotected.
 
 
 36
 This case well fits the Second Circuit's remark in W.E. Bassett Company v. Revlon, Inc., 435 F.2d 656, 662 (2d Cir.1970), that where a large company used a smaller company's mark while attempting to purchase the smaller company and knowing that patent office would not register the name, the facts were "surrounded by an aura of indifference to plaintiff's rights and a smug willingness to determine unilaterally that the good will plaintiff had sought to foster could safely be treated as a nullity." In its supporting affidavits and briefing, Revolution argues that despite its knowledge of Revelation's existence, its executives did not believe confusion would result, because Revolution is in a more "mainstream" market than Revelation. But their markets are no more different than the beer and scotch markets, which we held to be insufficiently distinct to allow a confusing mark in Fleischmann Distilling 314 F.2d at 159-60 ("beer and Scotch whisky, being both within the alcoholic beverage industry,' are so related as to fall within the mischief which equity should prevent.' ").
 
 
 37
 Irreparable harm to Revelation is plain. An entirely innocent plaintiff, Revelation, occupies a small niche in the music market. The alleged infringer, Revolution, has vastly more money behind it. The difference in resources means that denial of a preliminary injunction is likely to be final in practical effect. Because it encroached on Revelation's mark with its eyes open, Revolution is bereft of any equities whatsoever. Revolution argued that it has spent a lot of money advertising the mark, despite its knowledge. Spending a lot of money to encroach on someone else's known trademark does not entitle the encroacher to avoid an injunction. Giant--Revolution should not prevail on a cynical gamble that it could overwhelm the smaller label in litigation.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We note that the Revelation Records trademark, while unregistered, still enjoys the protections offered by federal trademark law. New West Corp. v. NYM Co., Inc., 595 F.2d 1194, 1198 (9th Cir.1979). As an unregistered mark, it does not carry with it a presumption of validity. See Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1254 (9th Cir.1982). However, contrary to the district court's ruling, failure to register does not mean that the mark is inherently weak