PENPOWER TECHNOLOGY LTD., and Penpower Inc., Plaintiffs,

v.

S.P.C. TECHNOLOGY, GLZ Service Inc., PC Mobile Station.com Corp., JNB Group Inc., Herbet Lin d.b.a. all Tech Computer, Ivy Lin d.b.a. Ivy Computers, Inc., Elite Network Computer, Inc., Andy Chen d.b.a. Drifting Computer, Jack Wang d.b.a. Shenzhou Computer Mall, Inc., Tony Chang d.b.a. Azianeagle, and New York Computer Supply, Inc., Defendants.

Case No. 07–3621 SC.

United States District Court, N.D. California.

June 17, 2008.

Yung–Ming Chou, Attorney at Law, Fremont, CA, for Plaintiffs.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT*

SAMUEL CONTI, District Judge.

## I. *INTRODUCTION*

The present matter comes before the Court on the Motion for Default Judgment ("Motion") filed by the plaintiffs Penpower Technology Ltd., and Penpower Inc. (collectively "Plaintiffs"). Docket No. 23. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of the Court entered default against all Defendants save S.P.C. Technology and GLZ Service, Inc. Docket Nos. 13, 22. Both of these Defendants, however, were voluntarily dismissed. Docket Nos. 5, 14. After reviewing Plaintiffs' Motion and supporting declarations, the Court determined that Plaintiffs had submitted insufficient evidence to support their claims for damages. The Court therefore ordered Plaintiffs to submit additional evidence. *See* Order Re Plaintiffs' Motion for Default Judgment ("April 15 Order"), Docket No. 27. Plaintiffs have since submitted additional evidence in the form of three declarations and various exhibits. Docket Nos. 28, 29, 30. After reviewing this evidence, the Court, for the following reasons, GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Default Judgment.

## II. *BACKGROUND*

Plaintiff Penpower Technology, Ltd., is a Taiwanese corporation and Plaintiff Penpower, Inc., is a California-based corporation owned by Penpower Technology, Ltd. Compl., Docket No. 1, ¶¶ 1, 2. Plaintiffs are "actively involved in the research, development, manufacture and sale of multilingual handwritten recognition, optical character recognition, voice recognition, biometric recognition, computer handwriting software, and the peripheral parts and products." *Id.* ¶ 1. Relevant to the present action, Plaintiffs develop and manufacture Chinese–to–English handwriting recognition software and hardware. First Shih Decl. ¶ 8.[1] Plaintiffs are the registered owners of the trademark "Penpower." *Id.* ¶ 6. This trademark is registered with the United States Patent and Trademark Office under the registration numbers 2851603 and 2975420. *Id.* Plaintiffs are also the authors of Penpower Handwriting Recognition Software and Penpower Jr. Handwriting Recognition Software. *Id.*

Plaintiffs allege that Defendants have sold and are continuing to sell counterfeit products and products incorporating Penpower handwriting recognition software. Plaintiffs also allege that Defendants have reverse engineered and unlawfully incorporated identical or substantially similar un-

---

1. Debra Shih is the president of Penpower Ltd. and Penpower Inc. She submitted declarations in support of Plaintiffs' Motion for Default Judgment and in response to the Court's request for further evidence. Docket Nos. 23, 28, 29. The Court shall refer to these declarations as the First, Second, and Third Shih Declarations, respectively.

derlying logic, structure, organization and sequencing of Penpower software.

Plaintiffs' Complaint alleges the following causes of action: (1) trademark infringement; (2) unfair competition and false designation of origin; (3) violation of trademark counterfeiting act; (4) unfair competition, deceptive advertising and unfair trade practices under California law; (5) dilution and injury to business reputation under California law; (6) copyright infringement; and (7) unfair, unlawful and fraudulent business practices under California law. *See* Compl. In their Motion, Plaintiffs seek an injunction preventing Defendants from infringing Plaintiffs' trademarks and copyrights; an injunction ordering Defendants to deliver up for destruction all infringing products; and an injunction ordering Defendants to issue a recall over infringing materials; treble damages in the sum of $677,075.37; statutory damages of $100,000 for willful copyright infringement; punitive damages of $500,000; attorneys' fees of $16,497; and costs of $2,005.

## III. *LEGAL STANDARD*

After entry of default, the Court may enter a default judgment. Fed. R.Civ.P. 55(b). "However, entry of default does not automatically entitle the non-defaulting party to entry of a default judgment regardless of the fact that the effect of entry of a default is to deem allegations admitted." *In re Villegas,* 132 B.R. 742, 746 (9th Cir.BAP1991). Rather, "the decision to enter a default judgment is discretionary." *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988). First, the Court must "assess the adequacy of service of process on the party against whom default is requested." *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters,* No. C–00–0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D.Cal. Jan. 2, 2001). Once the Court determines that service was sufficient, it may consider the

following factors when exercising its discretion to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir.1986).

## IV. *DISCUSSION*

### A. *Service of Process*

Service of process against all Defendants was adequate. Federal Rule of Civil Procedure 4(e) allows service upon an individual by personally delivering to the individual the summons and complaint. Rule 4(h) provides the standards for service upon corporations, associations, or partnerships. Copies of the summons and complaint were properly served on all Defendants. *See* Docket Nos. 6, 7, 8, 9, 10, 11, 12, 17, 17–3.

### B. *Merits of Motion*

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir.1977). For the following reasons, the *Eitel* factors favor default judgment in four of Plaintiffs' seven causes of action.

#### 1. Prejudice

Accepting the allegations in the Complaint as true, Plaintiffs would be prejudiced absent entry of default judgment. If Defendants continue to sell coun-

terfeit products and products incorporating Penpower handwriting recognition software or unlawfully incorporate identical or substantially similar logic, structure, organization, and sequencing of Penpower software into their products, Plaintiffs will likely be without other recourse or recovery. Such a situation qualifies as prejudice. *See PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002).

### 2. Merits of Plaintiffs' Substantive Claims and Sufficiency of Complaint

Plaintiffs assert the following claims: (1) trademark infringement in violation of 15 U.S.C. § 1114(1); (2) unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); (3) trademark counterfeiting act in violation of 15 U.S.C. § 1116; (4) unfair competition, deceptive advertising and unfair trade practices under California Business and Professions Code § 17200 *et seq.;* (5) dilution and injury to business reputation under California Business and Professions Code § 14330; (6) copyright infringement in violation of 17 U.S.C. § 101 *et seq.;* and (7) unfair, unlawful and fraudulent business practices under California Business and Professions Code § 17200 *et seq.* The Court addresses each in turn.

To prevail on their trademark infringement claim under 15 U.S.C. § 1114(1), Plaintiffs must demonstrate that Defendants used in commerce any reproductions or counterfeits of a registered mark or reproduced or colorably imitated a registered mark in such a manner as to likely cause confusion or to deceive. 15 U.S.C. § 1114(1). Plaintiffs' Complaint properly alleges the elements of this cause of action. Compl. ¶¶ 18–21. Accepting the allegations in the Complaint as true, Plaintiffs' claim has merit.

■ To prevail on their unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a), Plaintiffs must show that Defendants used in commerce a word, term, name, symbol, or device or a false designation of origin that is likely to cause confusion. 15 U.S.C. § 1125(a). In the present case, Plaintiffs properly allege that Defendants have adopted confusingly similar marks, characters, packaging, and graphics for their products. These allegations are adequately pled.

■ Plaintiffs' third cause of action is brought under the Trademark Counterfeiting Act, 15 U.S.C. § 1116. Section 1116 "vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n, Inc. v. McCord,* 452 F.3d 1126, 1137 (9th Cir.2006). In particular, § 1116 states that a court may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable[ ] to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent violation under subsection (a), (c), or (d) of section 1125." 15 U.S.C. § 1116(a).

It is unclear to the Court whether Plaintiffs seek to assert an independent claim under § 1116 or whether Plaintiffs included § 1116 because they seek injunctive relief. At least one Circuit has indicated that § 1116 does not provide an independent cause of action. *See Gibraltar, P.R., Inc. v. Otoki Group, Inc.,* 104 F.3d 616, 618 (4th Cir.1997) (holding that a violation of federal law is a necessary predicate for claiming the remedies, including remedies available under 15 U.S.C. § 1116(a)). Nonetheless, Plaintiffs' second cause of action alleges violations of § 1125. The Court therefore construes Plaintiffs' third cause of action as a request for an injunction pursuant to Plaintiffs' § 1125 claim.

The Court discusses the appropriate damages and remedies, including injunctive relief, below.

Plaintiffs' fourth cause of action alleges unfair competition, deceptive advertising and unfair trade practices in violation of California Business and Professions Code § 17200 *et seq.* "California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Group,* 476 F.3d 665, 674 (9th Cir.2007) (citing Cal. Bus. & Prof.Code § 17200 *et seq.*). "This tripartite test is disjunctive and the plaintiff need only allege one of the three theories to properly plead a claim under section 17200." *Med. Instrument Dev. Lab. v. Alcon Lab.,* CV 05–1138, 2005 WL 1926673, at *5 (N.D.Cal. Aug. 10, 2005). Although this claim is properly pled, it is, as discussed below, preempted by Plaintiffs' copyright claim.

■ Plaintiffs' fifth cause of action alleges dilution and injury to business reputation in violation of California Business and Professions Code § 14330. Section 14330 was repealed by statute, effective January 1, 2008. *See* Stats.2007, c. 711 (A.B. 1484), § 1. "The repeal of a statute creating a penalty, running either to an individual or the state, at any time before final judgment, extinguishes the right to recover the penalty." *People v. One 1986 Toyota Pickup,* 31 Cal.App.4th 254, 262, 37 Cal.Rptr.2d 29 (Ct.App.1995).

■ Plaintiffs' sixth cause of action alleges copyright infringement under 17 U.S.C. § 101 *et seq.* Plaintiffs must satisfy two requirements to present a prima facie case of copyright infringement: ownership of a valid copyright and violation of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *A & M Records, Inc. v. Napster, Inc.,* 239

F.3d 1004, 1013 (9th Cir.2001). Although far from clear, it appears that Plaintiffs' Complaint alleges violations of § 106(1) or (2). Section 106(1) grants the owner of a copyright exclusive rights to reproduce the copyrighted work. 17 U.S.C. § 106(1). Section 106(2) grants the owner of a copyright exclusive rights to prepare derivative works based upon the copyrighted work. *Id.* § 106(2).

The Court must first determine whether Plaintiffs have alleged ownership of the copyright. Plaintiffs' Complaint states that Plaintiffs "have filed [an] application for registration with the United States Copyright Office under the In–Process No. 155860333." Compl. ¶ 34. This statement indicates that Plaintiffs do not yet own a valid copyright. This, however, does not end the inquiry. 17 U.S.C. § 411(a) states, in part: "no action for infringement of the copyright in any United States work shall be instituted until *preregistration* or registration of the copyright claim has been made in accordance with this title." (emphasis added). This language has generated a split between Circuits as well as a split within the California district courts.[2]

Certain courts have found that a plaintiff may bring a copyright suit while his or her application for copyright registration is pending before the Copyright office. *See Gable–Leigh v. N. Am. Miss,* No. 01–1019, 2001 WL 521695, at *4 (C.D.Cal. April 13, 2001) (finding that the " 'registration requirement' set forth in § 411 ... may be satisfied by adducing evidence that the plaintiff has deposited the work in question and paid the registration fee, and that the Copyright Office has received plaintiff's application"). Other courts have determined that a copyright action may not be brought until the issuance of a registration certificate. *See, e.g., Loree Rodkin Mgmt. Corp. v. Ross–Simons, Inc.,*

---

**2.** The Ninth Circuit has yet to weigh in on this issue.

315 F.Supp.2d 1053, 1054–55 (C.D.Cal. 2004). Even within the Northern District, courts have reached different conclusions. *Compare Tabra, Inc. v. Treasures de Paradise Designs, Inc.,* No. 90–0155, 1992 WL 73463, at *1 (N.D.Cal.1992), *with Brush Creek Media, Inc. v. Boujaklian,* No. 02–3491, 2002 WL 1906620, at *1 (N.D.Cal. Aug. 19, 2002).

The Court is convinced that the plain language of § 411 permits a plaintiff to initiate a copyright infringement claim before the actual issuance of a registration certificate. Section 411 unambiguously states that after "preregistration" of a copyright, a copyright action may be filed. Plaintiffs allege that they "have filed [an] application for registration with the United States Copyright Office under the In–Process No. 155860333." Compl. ¶ 34. Such an action is equivalent to "preregistration." Plaintiffs have therefore sufficiently pled a copyright infringement action.

 The Court must next decide whether Plaintiffs' copyright action preempts Plaintiffs' claims for unfair competition under California Business and Professions Code § 17200 *et seq.* "Federal … copyright laws limit the states' ability to regulate unfair competition." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc. ("Summit"),* 7 F.3d 1434, 1439 (9th Cir.1993). "A state law cause of action is preempted by the Copyright Act if two elements are present." *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209, 1212 (9th Cir.1998). "First, the rights that a plaintiff asserts under state law must be rights that are equivalent to those protected by the Copyright Act." *Id.* (internal quotation marks omitted). "Second, the work involved must fall within the subject matter of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103." *Id.* (internal quotation marks omitted).

### i. Fist Element: Equivalent Rights

 "Unfair competition law in California prohibits any unlawful, unfair or fraudulent business practices." *Kodadek,* 152 F.3d at 1212 (internal quotation marks omitted). "The myriad branches of California's unfair competition law involve different elements and raise different issues." *Summit,* 7 F.3d at 1440. "[T]he breadth and analytical vagueness of [California's] unfair competition law complicates the preemption analysis greatly." *Id.* (internal quotation marks omitted; alteration in original).

 "Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law; an element which changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Id.* at 1439–40 (emphasis in original, internal quotation marks omitted). "This process has been described as a fact-specific inquiry, looking [at] whether the sate law claims as they are asserted are 'equivalent' to a federal copyright claim." *Salim v. Lee,* 202 F.Supp.2d 1122, 1125 (C.D.Cal.2002).

Both of Plaintiffs' § 17200 claims allege unfair, unlawful, and fraudulent business practices. Specifically, Plaintiffs' fourth cause of action alleges that Defendants' violations are causing "substantial injury, loss and damage to its ownership rights," Compl. ¶ 30, and Plaintiffs' seventh cause of action alleges "loss of customers, dilution of goodwill, confusion of potential customers, injury to their reputation, and diminution in value of their property rights." Compl. ¶ 47. Plaintiffs' copyright infringement claim alleges that Defendants have copied Plaintiffs' protected materials and marketed and sold these materials as Defendants' own. *See* Compl. ¶¶ 33–44.

The Court can discern no "qualitative" difference between the § 17200 claims and

the copyright infringement claim. *See Kodadek,* 152 F.3d at 1213 (finding plaintiff's § 17200 claim preempted by plaintiff's copyright infringement claim). It therefore appears that Plaintiffs' § 17200 claims are "based on rights equivalent to those protected by the federal copyright laws." *Id.*

### ii. Second Element: Copyright Subject Matter

■ Plaintiffs seek to protect their Penpower software. Computer software is a proper subject matter for copyright protection. *See, e.g., Apple Computer, Inc. v. Formula Int'l Inc.,* 725 F.2d 521, 525 (9th Cir.1984).

As both prongs of the preemption analysis are met, Plaintiffs' § 17200 causes of action are preempted. *See Kodadek,* 152 F.3d at 1213; *see also* 1 Nimmer, § 1.01[B][1][e] at 1–24, n. 110 (stating that if B is selling B's products and representing to the public that they are B's products, a claim by A that B's products replicate A's is a disguised copyright infringement claim and is preempted).

Plaintiffs' seventh cause of action is for unfair, unlawful, and fraudulent business practices in violation of California Business and Professions Code § 17200. For the reasons just discussed, this claim is preempted by Plaintiffs' copyright claim.

To summarize, the Court finds that the merits of Plaintiffs' claims and the sufficiency of the Complaint favor default judgment for Plaintiffs' first, second, and sixth causes of action and militate against default judgment for Plaintiffs' fifth cause of action. Plaintiffs' fourth and seventh causes of action under § 17200 are preempted. Plaintiffs' third cause of action, for an injunction pursuant to 15 U.S.C. § 1116, is discussed below.

### 3. Amount of Money at Stake

■ The sum of money at stake weighs against default judgment. Plaintiffs seek treble damages in the sum of $677,075.37, punitive damages of $500,000, statutory damages of $100,000 for willful copyright infringement, attorneys' fees of $16,497 and costs of $2,005.

Plaintiffs are unable to articulate a concrete basis for their non-statutory monetary damages. Plaintiffs themselves concede as much, stating, "it is difficult to pinpoint actual loss in a specific year due to defendants' infringement activities and sales of counterfeit products." Compl. ¶ 4. To compensate for this difficulty, Plaintiffs have come up with "three different approaches to substantiate [their] damages claims." *Id.* These approaches are for damages based on relative business growth rate, damages based on differences in income statements, and damages based on forecasted versus actual sales. *Id.* Each approach yields a different amount of damages, ranging from $190,790 for the forecasted versus actual sales theory, to $309,119 for the damages based on income statements. In essence, Plaintiffs present all three theories with the hope that the Court will pick the one it finds most attractive.

Besides the fact that none of the theories presents a particularly compelling method for determining damages, the fact that Plaintiffs themselves are unable to determine their damages is proof that the damages are too speculative.

Plaintiffs' request for $500,000 in punitive and exemplary damages is equally speculative. Accordingly, this *Eitel* factor weighs against default judgment.

### 4. Possibility of a Dispute Concerning Material Facts

Upon entry of default, all well-pleaded facts in the Complaint are taken as true. *Geddes,* 559 F.2d at 560. This factor weighs in favor of default judgment.

### 5. Whether Default Was Due to Excusable Neglect

As noted above, Defendants were all properly served. Although none of the Defendants has made an appearance or participated in any manner in this action, the Court finds that the possibility that default resulted from excusable neglect of all Defendants is remote. This factor therefore weighs in favor of default judgment.

### 6. Policy for Deciding on the Merits

 "Cases should be decided on the merits whenever possible." *Eitel,* 782 F.2d at 1472. The existence of Federal Rule of Civil Procedure 55(b), however, indicates that this preference alone is not dispositive. Where, as here, defendants fail to respond to a Complaint, a decision on the merits is impractical, if not impossible. Ultimately, the preference to decide cases on the merits does not preclude a court from granting default judgment. *See, e.g., Pepsico,* 238 F.Supp.2d at 1177.

### 7. Summary

Taken together, the *Eitel* factors favor default judgment on Plaintiffs' first cause of action for trademark infringement in violation of 15 U.S.C. § 1114(1); second cause of action for unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); and sixth cause of action for copyright infringement in violation of 17 U.S.C. § 101 *et seq.*

The *Eitel* factors militate against default judgment on Plaintiffs' fifth cause of action for dilution and injury to business reputation under California Business and Professions Code § 14330. Plaintiffs' fourth and seventh causes of action for unfair, unlawful, and fraudulent business practices under California Business and Professions Code § 17200 *et seq.,* are preempted. Plaintiffs' third cause of action, for injunctive relief under 15 U.S.C. § 1116, is discussed below.

### C. *Relief Sought*

Plaintiffs seek monetary and statutory damages, as well as injunctive relief and attorneys' fees and costs.

### 1. Damages

 "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes,* 559 F.2d at 560. Plaintiffs seek $500,000 in punitive damages, and treble damages of approximately $600,000. For the reasons stated in section IV.B.3., *supra,* the Court finds that the monetary damages sought by Plaintiffs are too speculative. Without a concrete method for determining provable damages, a monetary award is not supportable. *See Geddes,* 559 F.2d at 560. This conclusion is only strengthened by the fact that the Court has already provided Plaintiffs with the opportunity to submit additional evidence that would demonstrate their monetary damages claims. *See* April 15 Order.

Plaintiffs also seek statutory damages in the amount of $100,000 "for each copyrighted work infringed by Defendants." Compl. at 10. 17 U.S.C. § 504(c)(2) states: "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."

 The only indication that Defendants' infringements were willful comes from Plaintiffs' Complaint, which alleges that "Plaintiffs have requested Defendants to cease and desist from their acts of trademark infringement and have given Defendants actual notice of Plaintiffs' registration, but Defendants have refused to cease such acts." Compl. ¶ 20. Although the Court must generally accept the factual allegations of the Complaint as true,

allegations relating to the amount of damages must be supported by some evidence. *See Geddes,* 559 F.2d at 560. As there is no other evidence, aside from the factual allegation in the Complaint, that Defendants acted willfully, the Court cannot find that such was the case.

### 2. Injunctive Relief

 Plaintiffs seek injunctive relief pursuant to 15 U.S.C. § 1116(a). "A plaintiff is not automatically entitled to an injunction simply because it proves its affirmative claims." *Pepsico,* 238 F.Supp.2d at 1177. Nonetheless, 15 U.S.C. § 1116(a) entitles a trademark owner to an injunction if the owner's rights are being violated. *Playboy Enters. Int'l, Inc. v. Muller,* 314 F.Supp.2d 1037, 1043 (D.Nev.2004); *see also Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180–81 (9th Cir. 1988) (stating "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement"). In light of the allegations presented by Plaintiffs', the Court finds that injunctive relief is appropriate and GRANTS Plaintiffs' request for a permanent injunction enjoining Defendants from using Plaintiffs' trademarks on counterfeit products or from otherwise infringing on Plaintiffs' trademarks or copyright.

### 3. Attorney's Fees and Costs

 Plaintiffs seek attorneys' fees of $16,497 and costs of $2,005. "The Copyright Act of 1976, 17 U.S.C. § 505, provides in relevant part that in any copyright infringement action 'the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs.'" *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 519, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

District courts should consider, among other things, the degree of success obtained; frivolousness; motivation' objective unreasonableness (both in the factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence.

*Historical Research v. Cabral,* 80 F.3d 377, 379 n. 1 (9th Cir.1996). None of these factors weighs against awarding attorneys fees in the present case.

 To determine a reasonable attorney fee award, courts employ the lodestar method. *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* There is a strong presumption that the lodestar figure constitutes reasonable fees, and only in exceptional cases will adjustment of the lodestar be appropriate. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

Attached to a declaration from Plaintiffs' counsel is an exhibit containing a detailed breakdown of the time counsel spent working on this case. *See* Chou Decl., Docket No. 30, Ex. A. The exhibit states that counsel's rates in 2007 were $250 per hour for court appearances, $225 per hour for office work, and $115 per hour for travel. *Id.* at 3. For 2008, these rates went up to $250 per hour for both office and court work and $150 per hour for travel. *Id.* Counsel then provides almost eight pages of extremely detailed billing entries, with some entries containing billing periods as small as .05 hours (3 minutes). *See id.* at 4. These entries are equal to the amount that counsel, in his declaration, states as the total amount of fees—$16,497.

As noted above, the standard in this Circuit for determining reasonable attorneys' fees is based on the lodestar method.

Therefore, rather than parse each billing entry provided by Plaintiffs' counsel in search of some indication of reasonableness, the Court will instead undertake an appropriate lodestar analysis and determine whether that result approximates counsel's own fee calculation.

■ In assessing a reasonable hourly rate, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Cancio v. Fin. Credit Network,* No. 04-3755, 2005 WL 1629809, at *1 (N.D.Cal. July 6, 2005). Determination of prevailing market rates in certain communities is no easy task. Courts within this district have used different methods and reached different results. *Compare Yahoo!, Inc. v. Net Games, Inc.,* 329 F.Supp.2d 1179, 1192 (N.D.Cal.2004) (employing complex formula to determine that average hourly rate in the San Francisco area around 2002 was $190 per hour), *with Cancio,* 2005 WL 1629809 at *3 (finding that precedent in the Northern District of California supported hourly rates in 2005 of $345 per hour and $435 per hour).

Determination of a reasonable hourly rate also depends on the skill, experience and reputation of the attorney as well as the complexity of the litigation. Neither factor benefits counsel in the present action. Counsel submitted no information regarding his skill, experience, or reputation. In addition, the present litigation is not complex. Counsel drafted a relatively straightforward Complaint, the problems with the fourth, fifth and seventh causes of action notwithstanding, filed service of process, and drafted and filed a total of four pages of briefing for the motion for default judgment. In light of these facts

and the relevant caselaw from this district, the Court concludes that Plaintiff's hourly rates are not unreasonable.

■ The second lodestar factor is the reasonable number of hours counsel spent prosecuting the case. If the requested number of hours is greater than the number of hours reasonably competent counsel would have billed, then the court should reduce the requested number of hours accordingly. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Given counsel's various hourly rates, it is difficult to determine, without extensive and time-consuming calculations, precisely how many hours counsel spent on each general task. As indicated in counsel's declaration, most of the work done on this case was done at counsel's office in 2007. Counsel's rate for this work was $225 per hour. Thus, taking the total amount sought by counsel, $16,497, and dividing this number by $225, the Court estimates that counsel spent approximately 73 hours on this case.[3]

The Court cannot conclude that 73 hours is an unreasonable amount of time. Other courts in this district have found similar numbers of hours for attorney fee awards for trademark and copyright default judgments to be reasonable. *See, e.g., Yahoo!,* 329 F.Supp.2d at 1189 (finding 74.4 hours to be reasonable for trademark default judgment); *Jackson v. Sturkie,* 255 F.Supp.2d 1096, 1105 (N.D.Cal.2003) (holding that a total of almost 70 hours—57.5 for attorney and 10.3 for legal assistant— was reasonable in copyright infringement default judgment action).

■ Finally, Plaintiffs seek costs of $2,005 for the filing fee and for the costs of the process server. As these costs were reasonably incurred, the Court awards them in full.

---

**3.** Counsel did not provide any totals for his time.

For the reasons stated above, the Court AWARDS attorneys' fees of $16,497 and costs of $2,005.

## V. *CONCLUSION*

For the foregoing reasons, the Court GRANTS default judgment on Plaintiffs' first cause of action for trademark infringement in violation of 15 U.S.C. § 1114(1); second cause of action for unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); and sixth cause of action for copyright infringement in violation of 17 U.S.C. § 101 *et seq.*

The Court DENIES default judgment on Plaintiffs' fourth and seventh causes of action for unfair competition, deceptive advertising and unfair trade practices under California Business and Professions Code § 17200 *et seq.*, and fifth cause of action for dilution and injury to business reputation under California Business and Professions Code § 14330.

Plaintiffs' request for a permanent injunction is GRANTED.

It is hereby ORDERED that:

Defendants, their officers, agents, servants, employees and all other persons acting in concert or participation with them, are permanently enjoined from:

—Infringing Plaintiffs' trademark and/or copyright in any manner; or

—Distributing, advertising, promoting, offering for sale and/or selling any merchandise bearing or using any of Plaintiffs' trademarks, or any colorable imitations thereof.

In addition, the Court GRANTS Plaintiffs' attorneys' fees in the amount of $16,497 and costs in the amount of $2,005.

IT IS SO ORDERED.